## THE AMABLE.

### No. A–15817.

District Court, E. D. New York.

April 1, 1940.

Crowell & Rouse, of New York City (E. Curtis Rouse and George L. Varian, both of New York City, of counsel), for libelant.

Henry Solomon, of Brooklyn, N. Y. (William Fine, of Lynbrook, L. I., N. Y., of counsel), for respondent.

BYERS, District Judge.

The libel states a cause petitory and for possession, namely: That the libelant in the month of October, 1939, "became and now is the true and lawful owner of the Gas-Screw M/B "Amable" (Registry No. 10 P 499) and entitled to possession thereof".

That the latter is wrongfully withheld by respondent upon an alleged claim of title based upon a pretended sale which was unauthorized by the libelant.

The respondent filed claim, and an answer denying the ownership as alleged and the wrongful possession on its part, and pleads purchase on the 6th of October, 1939, and the filing of a bill of sale on or about the 7th of October from the registered owner who was the vendor, and that thereafter registration was procured in the name of the respondent, and that "the libelant at no time during October, 1939, and up to the present, filed any bill of sale of said vessel or caused said vessel to be registered in its name".

Also, that the respondent acquired title from one Anthony Pisano, from whom the libelant claims ownership, and that he is subject to the jurisdiction of this court, and can be made a party to this cause, but has not been.

The trial brought to light the following circumstances:

On October 7, 1939, Anthony Pisano signed a document entitled "Order", addressed to the libelant, which contained Pisano's name and his address as 29–30 Brockmeyer Drive, Massapequa, Long Island, for one 1940 model 22' Semi-shelter Sea Skiff, the engine and equipment being described, and the name given as Amibila II, as to which the estimated delivery date is April 1, 1940, "afloat at Massapequa, L. I., at purchaser's risk and expense".

Then appears the following:

Printed      Typewritten
"Price    Even exchange for the purchaser's 22' Wheeler sedan cruiser Emibila.

"Terms   Said used boat to be turned over to Wheeler Shipyard, Inc., on signing this order."

Following the above are printed paragraphs having to do with final payments, guarantees on the part of the Shipyard, defects, authorization for repairs, deferred payments, deposits, conditional sales contracts, and:

"(14) Title to the boat hereby ordered shall not pass to the purchaser until payment in full has been made."

"(17) With the delivery of any boat traded-in or accepted as part payment, *all necessary documents to transfer and convey full title thereto, free and clear of all encumbrances, will be executed and delivered to the Shipyard.* The model and description of any boat set forth in this order as a trade-in on account of purchase price shall be furnished and guaranteed by the undersigned purchaser." (Italics supplied.)

The order bears the purchaser's signature—Anthony Pisano—and the acceptance by an officer of the libelant. That document constitutes, with the following, libelant's Exhibit 1: Small data card (in duplicate) of the Department of Commerce, Bureau of Marine Inspection and Navigation, signed by Anthony Pisano, undated and not sworn and subscribed to, the blank being entitled Cat. No. 1512.

These had to do with the new boat contracted for, and did not affect the legal complexion of the order.

The trade-in boat described in the foregoing document was never physically delivered to the libelant—which is the reason for this litigation.

The testimony shows that the "Certificate of Award" entitled (Title 46 U.S.C. § 288, 46 U.S.C.A. § 288) Cat. No. 1513 of the Department of Commerce, containing the number 10 P 499 awarded on July 14, 1936, applied to the vessel called the Amable owned by Anthony Pisano, of the same address as stated in libelant's Exhibit 1.

On the reverse side, in the portion of the blank headed "Bill of Sale", it appears that, in consideration of the sum of one dollar, Anthony Pisano, owner of the vessel above described, did thereby "sell and transfer all of" his "right, title and interest" therein to Chatfield's Marine Sales & Service, Inc., of Freeport; the signature is "Mr. Anthony Pisano", of the same

address, above the words "Subscribed and sworn to before me, an officer authorized to take acknowledgment", etc., "this 6th day of October, 1939. Arthur W. Chatfield, Jr., Notary Public, Nassau County".

Such is the written evidence of the purported transaction upon which the respondent relies to defeat the libel.

The document was not signed by Anthony Pisano but by his son in the presence of the former, who is said to have authorized the signing. Edward Pisano, the said son, being a witness at the trial, would not state that he did the actual signing on October 6th, professing to be unable to give the correct date; the notary public before whom the document is said to have been subscribed and sworn to was the secretary of the respondent corporation, and he testified that the transaction took place on the date that the document bears.

It is quite apparent that this controversy is a dispute between two dealers in motor boats, and reveals certain practical amenities of salesmanship rather than a true maritime cause.

The libelant argues that the transaction of October 7, 1939, constitutes, as between itself and Anthony Pisano, a transfer of his ownership in the trade-in motor boat, and that the respondent is in the same case with Pisano, being a person having actual notice of the sale and conveyance; this, in view of 46 U.S.C. § 921, paragraph (a), 46 U.S.C.A. § 921(a), having to do with a sale or conveyance of a vessel of the United States, which by that statute requires for its validity the recordation of a bill of sale in the office of the Collector of Customs of the port of documentation of such vessel. Also that the bill of sale upon which the respondent relies was not filed or recorded in the office of the Collector of the Port of New York until October 11, 1939.

It should be stated further, that Anthony Pisano (according to libelant's testimony) said that he was unable to sign the bill of sale on October 7, 1939, when he signed the order which has been quoted, because the former was then in the cabin of the said trade-in motor boat (then afloat at Freeport in the yard of the respondent) but would do so at once upon getting to that place. This testimony was not contradicted by Anthony Pisano, and its significance will later be referred to.

When the libelant's representative called at the respondent's yard to take possession as contemplated by the order, he was confronted with the alleged transfer of title upon which the respondent relies.

It would seem that the initial inquiry must be directed to the nature of the transaction between the libelant and Anthony Pisano on October 7, 1939. If that was a sale and delivery of the motor boat and Pisano then owned it, the libelant should prevail, on the theory that the respondent was in privity with Pisano and must stand or fall with him, and that absence of recordation is of no moment as between the parties.

It seems to me that libelant's Exhibit 1 was not a bill of sale and did not purport to be anything other than an order for a new motor boat, and that to accord to it the character of a document of title would be to strain its terms beyond their reasonable import. The execution of the data cards for the new boat did not affect the legal constituency of the order.

If the boat had been destroyed by fire on that afternoon, Pisano would have been entitled to recover the insurance; and if it had been sunk or otherwise damaged, the loss would have been his, and the right of recovery would have pertained to him. He had merely undertaken to make a transfer of his property by executing a bill of sale and making delivery of the affected chattel, and if he had already, by the alleged transaction of October 6th, disabled himself from performing the undertaking described in the order, he might still have acquired the new motor boat by paying the consideration in cash, instead of by performing the trade-in aspect of the order.

The authorities upon which the libelant relies are the following:

The Taranto, 23 Fed.Cas. No. 13751: It was there held that agents who had taken title under a bill of sale to a vessel, in behalf of a number of persons, were properly the subject of a decree in a possessory cause and that title to the vessel would be awarded to the true owners.

It is not the libelant's present theory, that Chatfield acquired title under the bill of sale, as agent for Wheeler.

Thurber v. The Fannie, 23 Fed.Cas. No. 14014: This was a possessory cause in which it appeared that Smith, the origi-

nal owner of an undocumented sloop, had sold and delivered it to the libelant, without executing and delivering a bill of sale; he had undertaken to procure one from the last former owner and had received a payment on account of the purchase price; it was agreed that, when he should deliver the bill of sale, the libelant would execute and deliver to the vendor a mortgage to secure a portion of the purchase price. Smith was a ship's carpenter and operated a repair yard, and made repairs on the vessel for the libelant and otherwise recognized the latter as the true owner of the sloop. Thereafter he caused the vessel to be seized, and sold it to a third person and upon the trial sought to justify his conduct because the libelant had never executed the said mortgage.

Judge Benedict in this court entered a decree for the libelant and found that the sale and delivery to the latter had been unqualified and that there had been a contract of sale, accompanied by delivery, and that the vendor could not object to the absence of a bill of sale to libelant, under the circumstances shown in the record. His opinion contains the following: "The absence of a bill of sale is certainly a fact to be explained; but when explained and the fact of ownership clearly proved, I see no sound reason why a court of equity should as an arbitrary rule require in all cases a formal bill of sale."

He found that there was a marine trespass committed by the respondent and that the court had petitory as well as possessory jurisdiction, and accordingly awarded the decree to the libelant.

Thus in the first case, there was a bill of sale which was actually the property of the libelants, although taken in the name of their agents; and in the second, there was an unqualified sale and delivery and the vendor was in default by reason of his own breach of contract, and the mere absence of the bill of sale which he had agreed to procure and deliver was not a sufficient defense to the libelant's cause.

That does not constitute a precedent available to this libelant, because here there has been no unconditional sale and delivery; indeed there has been no delivery whatever, actual or symbolic.

It does not seem that the provisions of the New York Personal Property Law, Consol.Laws, c. 41, Sections 100, 106 and 94, lead to a different conclusion. Exhibit 1 was not a contract to sell "specific goods"; it was an order for a new motor boat, and the consideration was to be paid by executing a bill of sale to an old one, and delivering that vessel to the builder of the one that was ordered.

The libelant also cites:

The Daisy, D.C., 29 F. 300. In principle this is the same as The Taranto, supra.

The Kitty C., D.C., 20 F.Supp. 173. This case decides that libelant was the true owner, and that he had not made a gift of the vessel to the claimant, in spite of causing registration to be entered in his name.

The Augustine, D. C., 8 F.2d 287. Sale and delivery were said to be "enough to confer title", as between the parties, documentation being for the purpose of notice.

Of course that is the law.

It results from what has been written, that the libel must be dismissed for failure of the libelant to demonstrate a sale and delivery. If this view is erroneous, and the libelant's Exhibit 1 did indeed confer title as against Anthony Pisano, then the decision should be in the libelant's favor, for I do not accept the testimony that there was a sale and delivery to the respondent on October 6, 1939. The reasons for that view may be briefly summarized as follows:

A. Anthony Pisano did not contradict the testimony of the witness Eugene M. Wheeler, that the former said on October 7th when he signed the order, that he would promptly execute the bill of sale, and deliver the trade-in craft at once. From what I saw of him and heard of his testimony, I believe that, if he had already participated in the alleged transaction of October 6th, he would not have ordered the new Wheeler boat at all; and if he had, he would not have undertaken to do an impossible thing, since if the respondent's testimony be accepted, the bill of sale had already been signed and sworn to.

B. The fact that the bill of sale on the reverse side of the certificate of award was signed by the son, Edward Pisano, allegedly in the presence of and with the authority of Anthony, is compatible only with a refusal on the latter's part to affix his name to a document which would repudiate one that he had already signed—namely, libelant's Exhibit 1. The entire

performance of having Edward sign his father's name is beyond understanding, save upon some such ground as is here suggested, unless Anthony was not even present.

C. Edward Pisano is a member of the New York police force, and had no stomach for swearing falsely at the trial as to the date of the alleged signing by him of his father's name, so professed his inability to recall the exact date. Of course this failure of memory was entirely feigned, and was resorted to for obvious reasons.

D. Edward Pisano probably understood full well, that there was no reason why his father should not, or could not, sign his own name, since he had already seen the Wheeler contract which his father had signed. He did not write his father's name, by himself as attorney in fact, since he had no power of attorney; and probably the efficient Chatfield selling staff told him that the transfer of the certificate of award in the Collector's office, if under a power of attorney, required the filing thereof in that office.

As a police officer, he probably realized that no prosecution for forgery would lie, if the principal was willing to authorize or ratify—or say that he did—the act of the one who did write the principal's name.

E. The explanation that the document was mailed on the day of its apparent date (and therefore in due course should have been received in the Collector's office on Saturday, the 7th of October) is not accepted, since the Collector's stamp indicates the date of actual recordation to have been October 11th. If the mailing had been done on the 6th, the official action would have taken place on the 7th, or at the latest on the 9th. The testimony of Komet, from the Marine Registry of the Collector's office, so discloses.

F. Wheeler's testimony of giving actual notice of Anthony Pisano's order, Exhibit 1, by telephone to Chatfield on October 7th, is accepted, in view of the production of the telephone company records of a seven-minute conversation shortly after 2 p. m. on that day, between the two offices; and the contra Chatfield testimony is not accepted.

G. The letters in evidence between Wheeler and Chatfield are not compatible with the respondent's case; if the latter had in good faith acquired the Pisano boat from Anthony Pisano on October 6th, it would not have written on November 2nd that "we recently traded in (the Amable) from Mr. Pisano, Jr., the former owner of said Boat". That letter was signed by the A. W. Chatfield, Jr., who had affixed his name as notary to the bill of sale which, as a witness at the trial, he deposed was executed on October 6th by "Mr. Anthony Pisano" as owner.

It is a source of regret that the cause must be disposed of, in my judgment, upon the legal grounds that have been stated, for I am convinced that the respondent's cause is synthetic, not to say fabricated, and if I am wrong on the law, the foregoing summary of the facts perhaps may be deemed adequate support for correction on review of the decision here ordered.

Libel dismissed, without costs. Settle decree.